UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NORTH AMERICAN CRONITE, INC.<br>37162 Sugar Ridge Road<br>North Ridgeville, OH  44039 | ) ) ) | CASE NO. |
| | ) | |
| Plaintiff | ) ) | JUDGE |
| | ) | **VERIFIED COMPLAINT FOR** |
| vs. | ) | **INJUNCTIVE RELIEF AND** |
| | ) | **MONEY DAMAGES** |
| JIM DEMAREST | ) | |
| 390 Sylvan Drive | ) | **(Jury Demand Endorsed Herein)** |
| Canton, MI  48188 | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| | ) | |
| | ) | |

Now comes Plaintiff, North American Cronite, Inc. (hereinafter "Plaintiff"), by and through its undersigned counsel, Dworken & Bernstein Co., LPA and Stephen G. Thomas Co., LPA, and for its Complaint against Defendant, Jim Demarest (hereinafter "Defendant Demarest") states as follows:

**PARTIES**

1. Plaintiff is a corporation formed under the laws of the State of Ohio with its principal place of business in North Ridgeville, Lorain County, Ohio.

2. Defendant Demarest is an individual whose principal place of residence is in Canton, Michigan.

## JURISDICTION AND VENUE

3.      Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1-2 of this Complaint as if fully rewritten herein.

4.      This Court has subject matter jurisdiction over the claims set forth in this Complaint by way of the diversity of citizenship of the parties pursuant to 28 U.S.C.§1332(a)(1).

5.      Plaintiff and Defendant Demarest are citizens of the United States and the amount in controversy exceeds $75,000.00.

6.      This Court has personal jurisdiction over Defendant Demarest.

7.      This action is properly venued in this Court in as much as much as the events giving rise to the claims occurred in Cuyahoga County, Ohio and the parties agreed venue would be proper in any federal court located in Cleveland, Ohio.

## FACTS

8.      Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1-7 of this Complaint as if fully rewritten herein.

9.      Plaintiff is engaged in the business of manufacturing and distributing equipment for sale to industrial customers in the United States of America and elsewhere for use in the heat-treating industry.

10.      Defendant Demarest was employed by Plaintiff from June 1, 2013 until his resignation, which was effective April 3, 2023.

11.      Defendant Demarest was a salesman for Plaintiff selling equipment to be used in the heat-treating industry to various customers of Plaintiff.

12.      In addition to having his own customers which he was responsible for servicing, Defendant Demarest managed every member of Plaintiff's sales teams, which included

both outside sales representatives and employees responsible for sales

13.  Defendant Demarest's most recent position with Plaintiff at the time of his resignation was VP Sales & Marketing of North American Cronite.

14.  In 2022, Defendant Demarest oversaw sales in excess of $10,000,000.00 per year, which was up from sales of $4,360,000.00 in 2019, with sales projected to exceed $11,000,000.00 in 2023.

15.  Defendant Demarest was also a member of the Extended Management Cronite Team, which convened every quarter to review and address topics including, but not limited to the following:

   a.  Financial reports, results, and budgets;

   b.  Sales performance by Plaintiff in its various industrial segments, which included a review of the sales to each of Plaintiff's customers worldwide;

   c.  Identifying Plaintiff's main objections and challenges in connection with its sales;

   d.  Reviewing safety, industrial performance, inventories and purchases;

   e.  Conducting the information technology reviews;

   f.  Reviewing and addressing research and develop projects being undertaken by Plaintiff;

   g.  Reviewing and addressing design issues involving creating new or improving existing products offered for sale by Plaintiff.

   h.  Participating in the identification of Plaintiff's competitors.

16.  During his employment with Plaintiff, Defendant Demarest took part in the monthly steering committee meetings of Plaintiff which gave him full access to Plaintiff's digital business plans and records which included information regarding group sales and new client intake by geographic area, by sales manager, by segment of the industry, by alloy

and/or customer name.

17.   While employed with Plaintiff, Defendant Demarest also had access to Plaintiff's Microsoft Dynamics System, through which he could obtain detailed data and information regarding all aspects of Plaintiff's business.

18.   On or about June 1, 2013, Plaintiff entered an Employment Agreement with Defendant Demarest (hereinafter "Employment Agreement").

19.   A copy of the Employment Agreement is attached hereto as Exhibit "A" and made a part hereof.

20.   Pursuant to Paragraph 3 of the Employment Agreement, Defendant Demarest agreed to "Perform the customary duties of an employee of the company holding the title of Sales Manager."

21.   In Paragraph 4.3 of the Employment Agreement, Defendant Demarest acknowledged that Plaintiff had developed and will continue to develop valuable proprietary information, including, but not limited to software source codes, processes, plans, devices, research and development results, internal financial information, client lists and marketing strategies (hereinafter "Proprietary Information").

22.   In Paragraph 4.3 of the Employment Agreement Defendant Demarest agreed that he would not disclose any trade secrets or Proprietary Information relating to businesses or affairs or products or services provided by Plaintiff.

23.   In Paragraph 5 of the Employment Agreement, Defendant Demarest agreed to abide by certain restrictive covenants.

24.   In particular, in Section 5.1 of the Employment Agreement, Defendant Demarest agreed that "During the twelve (12) months after the Termination Date (the "Covenant Period"),

4

[Defendant Demarest] will not promote, participate, engage or have any other interest (whether [Defendant Demarest] is acting as owner, partner, stockholder, employee, broker, agent, principal, trustee, corporate officer, director, consultant or in any other capacity) in activities which are similar to those conducted by [Plaintiff] within the geographical territory of the United States."

25. The Employment Agreement goes onto provide that the activities which are considered similar to those conducted by Plaintiff include "any type of manufacturing or marketing of heat-treatment handling fixtures in casted or welded refractory alloys and composite steels, power generation or petro chemical parts."

26. Pursuant to Section 9.2 of the Employment Agreement, Defendant Demarest was required to give Plaintiff thirty (30) days written notice if he intended to resign without cause.

27. On or about March 2, 2023, Defendant Demarest provided Plaintiff with his notice of voluntary resignation, indicating that that resignation would be effective April 3, 2023.

28. A copy of the March 2, 2023 voluntary resignation is attached hereto as Exhibit "B" and made a part hereof.

29. Based on Defendant Demarest's notice of voluntary resignation, the Covenant Period provided for in Paragraph 5.1 of the Employment Agreement should have run through April 3, 2024, although Plaintiff contends the running of the Covenant Period should be tolled during any time Defendant Demarest was violating the restrictive covenants.

30. Sometime after the Effective Date of Defendant Demarest's voluntary resignation, Plaintiff was advised that Defendant Demarest had taken a position with Alcon Industries, Inc. (hereinafter "Alcon").

31. Alcon is a direct competitor of Plaintiff.

32. The Agenda from an April 30, 2019 Extended Pitstop Meeting in which Defendant Demarest participated identifies Alcon as a U.S. Competitor of Plaintiff on page 3.

33. A copy of the April 30, 2019 Extended Pitstop Meeting Agenda is attached hereto as Exhibit "C" and made a part hereof.

34. In a 2022 email to Pierre Munch, Cronite Holding's Chief Executive Officer, Defendant Demarest described Alcon as a competitor of Plaintiff.

35. A copy of this email is attached hereto as Exhibit "D" and made a part hereof.

36. Attached hereto as Exhibit "E" and made a part hereof is a page from Plaintiff's Website describing fixtures Plaintiff sells to companies in the heat-treating industry.

37. Attached hereto as Exhibit "F" and made a part hereof is a page from Alcon's website describing fixtures Alcon sells to companies in the heat-treating industry.

38. Exhibit "E" and "F" demonstrate the overlap in the products manufactured and sold by Plaintiff and Alcon.

39. Alcon, like Plaintiff, manufactures and sells equipment used in the heat-treating industry which directly compete with the equipment manufactured and sold by Plaintiff for use in the heat-treating industry.

40. Defendant Demarest appeared on Alcon's behalf at the ASM International Heat Treat Show in Detroit, Michigan, which ran from October 17 through October 19, 2023.

41. A copy of a post by Alcon including a photograph of Defendant Demarest at Alcon's table at the ASM International Heat Treat Show is attached hereto as Exhibit "G" and made a part hereof.

42.   Paragraph 5.6 of the Employment Agreement provides that in exchange for the Agreement not to engage in competitive activities, Defendant Demarest will receive compensation for the one (1) year period immediately following the Effective Date of his termination from Plaintiff.

43.   The compensation provided for in Paragraph 5.6 is equal to 60% of Defendant Demarest's base salary at the time of the termination, which is reduced to 30% of the base salary if, during that one-year period, Defendant Demarest begins to work for a third party, non-competitor.

44.   On or about April 21, 2023, one of Plaintiff's undersigned counsel, as a follow up to an earlier March 29, 2023 letter, wrote to Defendant Demarest asking for the identity of Defendant's new employer so as to calculate the amount due to Defendant Demarest pursuant to Paragraph 5.6 of the Employment Agreement.

45.   A copy of the April 21, 2023 letter is attached hereto as Exhibit "H" and made a part hereof.

46.   The April 21, 2023 letter also invoked the Alternative Dispute Resolution provisions contained in Paragraph 20 of the Employment Agreement.

47.   Counsel for Defendant Demarest responded to Plaintiff's undersigned counsel in a May 8, 2023 letter, a copy of which is attached hereto as Exhibit "I" and made a part hereof.

48.   The May 8, 2023 letter did not identify Defendant Demarest's new employer.

49.   The May 8, 2023 letter further stated that Defendant Demarest would not accept any future payments pursuant to Section 5.6 of the Employment Agreement.

50.   The May 8, 2023 letter further refused to participate in the ADR procedures set forth in Paragraph 20 of the Employment Agreement.

51. Plaintiff was eventually advised by various individuals working in the heat-treating industry that Defendant Demarest had taken a job with Alcon.

52. On or about June 8, 2023, undersigned counsel for Plaintiff overnighted a letter to Defendant Alcon for delivery on Friday, June 9, 2023 advising Alcon of Defendant Demarest's non-compete obligations under the Employment Agreement and seeking assurances from Alcon that Alcon would honor Defendant Demarest's non-compete obligations.

53. A copy of the June 8, 2023 letter is attached hereto as Exhibit "J" and made a part hereof.

54. Counsel for Alcon responded to this letter and ultimately confirmed that Defendant Demarest had, in fact, been employed by Alcon.

55. Counsel for Alcon provided Plaintiff's undersigned counsel with Defendant Demarest's Employment Agreement with Defendant Demarest.

56. A copy of Defendant Demarest's Employment Agreement with Alcon is attached hereto as Exhibit "K" and made a part hereof.

57. Defendant Demarest signed the Employment Agreement with Alcon on March 1, 2023, the day before Defendant Demarest gave his resignation to Plaintiff.

58. Despite being repeatedly asked, Defendant Demarest never disclosed he had accepted a job with Alcon.

59. Despite refusing to identify who he was working for Defendant Demarest was apparently trying to contact companies he worked with while he was employed by Plaintiff.

60. On or about September 12, 2023, Allen Elmgren from AFC Holcroft e-mailed Defendant Demarest at his old e-mail address with Plaintiff, apparently unaware that Defendant Demarest was working for Alcon, in which Mr. Elmgren was responding to a call from

Defendant Demarest regarding some RFQ's.

61.  A copy of the September 12, 2023 email is attached hereto as Exhibit "L" and made a part hereof.

62.  AFC Holcroft is a customer of Plaintiff to whom Plaintiff has previously made sales.

63.  Plaintiff, Defendant Demarest and Alcon ultimately agreed to mediate this dispute pursuant to Paragraph 20 of the Employment Agreement which provided for ADR before litigation could be filed.

64.  Pursuant to the Employment Agreement, Defendant Demarest was originally entitled to certain post-termination commissions from sales he was involved in while employed by Plaintiff were paid to Plaintiff by Plaintiff's customers.

65.  On or about July 7, 2023, Plaintiff's undersigned counsel wrote to Defendant Demarest's counsel advising that Defendant Demarest would not be paid those commissions because Defendant Demarest had materially breached the Employment Agreement by taking a job with Alcon.

66.  A copy of the July 7, 2023 letter is attached hereto as Exhibit "M" and made a part hereof.

67.  In addition to breaching the Employment Agreement by going to work for Alcon in violation of his non-compete obligations, after Defendant Demarest left Plaintiff, Plaintiff learned Plaintiff had breached his Employment Agreement by having other business interests while employed by Plaintiff.

68.  Paragraph 3 of the Employment Agreement provides that Defendant Demarest "hereby agrees to devote al of his working time, attention, and energies to the performance of his duties under this Agreement."

69.   After Defendant Demarest resigned from Plaintiff, Plaintiff learned that Defendant Demarest had an interest in Ignio Systems, Inc. (hereinafter "Ignio").

70.   Despite the fact that Ignio was a subcontractor of Plaintiff, Defendant Demarest never disclosed he had an interest in the company.

71.   Defendant Demarest was potentially entitled to over Two Hundred Thousand and 00/100 Dollars ($200,000.00) in future commissions when he resigned from Plaintiff.

72.   Plaintiff's obligation to pay those future commissions was excused when Defendant Demarest materially breached his obligations under the Employment Agreement.

73.   Defendant Demarest's right to Commissions was also the subject of the mediation pursuant to the ADR Provision of Paragraph 20 of the Employment Agreement.

74.   The mediation was held with Judge James A. McMonagle on September 13, 2023.

75.   The mediation was not successful.

76.   The September 13, 2023 mediation satisfied the ADR requirements of Paragraph 20 of the Employment Agreement thereby allowing Plaintiff to commence this litigation in any state or federal court in Cleveland, Ohio.

77.   Paragraph 20 of the Employment Agreement provides that if the parties have not been able to resolve the dispute within thirty (30) business days after the termination of ADR, then either Party may submit the dispute to litigation by filing a Complaint in Federal Court in Cleveland, Ohio.

78.   Thirty (30) business days following the failed September 13, 2023 mediation is October 25, 2023.

79.   Paragraph 5.7 of the Employment Agreement permits Plaintiff to recover the cost of this litigation, including, but not limited to Plaintiff's attorneys' fees.

80.   Paragraph 14 of the Employment Agreement authorizes Plaintiff to obtain injunctive relief for violations of Section 5 of the Employment Agreement without posting a bond or other security.

## COUNT I

### DEFENDANT DEMAREST'S BREACH OF THE EMPLOYMENT AGREEMENT

81.   Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1-80 of this Complaint as if fully rewritten herein.

82.   Defendant Demarest materially breached his non-compete obligations as set forth in the Employment Agreement by accepting a job with Alcon.

83.   Defendant Demarest has materially breached his obligation under 5.6 of the Employment Agreement to advise Plaintiff of any new employment he has entered into.

84.   As a direct and proximate result of Defendant Demarest's breach of the Employment Agreement, Plaintiff is entitled to injunctive relief prohibiting Plaintiff from violating the restrictive covenants contained in the Employment Agreement.

85.   As a direct and proximate result of Defendant Demarest's breach of the Employment Agreement, Plaintiff is entitled to damages in an amount in excess of $75,000.00.

## COUNT II

### DECLARATORY JUDGMENT

86.   Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1-85 of this Complaint as if fully rewritten herein.

87.   Plaintiff has advised Defendant Demarest that it will not pay him any additional post-termination commissions because Plaintiff's obligations to make these payments were

excused by Defendant Demarest's material breach of the non-compete restrictions set forth in the Employment Agreement that resulted from his employment with Alcon and his association with Ignio while employed by Plaintiff.

88.    Defendant Demarest is claiming he is entitled to those post-termination commissions.

89.    The amount of post termination commissions Defendant Demarest claims to be entitled to exceeds $200,000.00.

90.    A controversy over Defendant Demarest's entitlement to post-termination commissions exists.

91.    Plaintiff is entitled to a declaratory judgment that Defendant Demarest's entitlement to any further post-termination commissions has been excused as a result of his materially breaching the non-compete restrictions set forth in the Employment Agreement by accepting a job with Alcon and his association with Ignio while employed by Plaintiff.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Court enter judgment as follows:

A.    Temporary and permanent injunctive relief prohibiting Defendant Demarest from violating his restrictive covenant obligations as outlined in the Employment Agreement.

B.    A declaratory judgment that Defendant Demarest is not entitled to any further post-termination commissions.

C.    A judgment against Defendant Demarest for compensatory damages in an amount in excess of $25,000.00 to be determined at trial.

D.    An award of attorneys' fees incurred by Plaintiff for having to bring this action, to enforce the restrictive covenants contained in the Employment Agreement.

E.  An award of pre and post judgment interest.

F.  Such other relief as this Court deems appropriate.

Respectfully submitted:

/s/ Richard N. Selby, II

_____

Richard N. Selby II (#0059996)
DWORKEN & BERNSTEIN CO., L.P.A.
60 South Park Place
Painesville, OH   44077
Telephone: (440) 352-3391
Facsimile: (440) 352-3469
Email:  rselby@dworkenlaw.com
*Counsel for Plaintiff*

/s/ Stephen Thomas

_____

Stephen Thomas (#0007382)
Stephen G. Thomas Co., L.P.A.
85 Skyline Drive
Chagrin Falls, Ohio 44022
216-789-4806
440-247-7446 - fax
*Co-Counsel for Plaintiff*

## **JURY DEMAND**

Now comes Plaintiff, by and through its counsel, and demands that this case be tried before a jury of the maximum number allowed by law.

/s/ Richard N. Selby, II

_____

Richard N. Selby II (#0059996)
DWORKEN & BERNSTEIN CO., L.P.A.

## <u>VERIFICATION</u>

I, Radek Houdek, have reviewed the Complaint and all of the exhibits attached to it. Pursuant to my own personal knowledge, I believe all of the facts set forth in the Complaint to be true.

FURTHER AFFIANT SAYETH NAUGHT.

*Radek Houdek* 

**RADEK HOUDEK**

SWORN TO BEFORE ME, and subscribed in my presence on October 26ᵗʰ, 2023.

RONNA A. SNEARY
NOTARY PUBLIC
STATE OF OHIO
Comm. Expires
04-20-2024

NOTARY PUBLIC            04/20/2024
My Commission Expires: _____

14